Caton, J. In this case we are only called upon to decide upon the effect of the judgment, under which the premises in question were sold, for the non-payment of taxes. That the Court hafd jurisdiction, there is no doubt. It is not disputed, that the exigencies are shown to have existed, which called upon the Court to act, to adjudicate, and to procceed to render a judgment. The rule of law is well settled, that when a judgment is rendered by a Court thus possessing jurisdiction, although the judgment may be irregular and erroneous, it is obligatory until reversed. Young v. Lorraine, 11 Ill, 624. This principle is applicable to the case before us, for although the statute authorizes a judgment for taxes, in effect to be defeated by the proof of certain facts in a collateral action ; as no attempt is made to prove any of those facts, that provision of the statute has no application, as we will hereafter attempt to show. The only question then would seem to be, is this such a judgment as the Court had authority to render ? The statute prescribes a form for these judgments, which form is directed to be adopted as near as the nature of the case will permit. This form contains certain recitals, after which follows the judgment of the Court, which is in favor of the State and against the several tracts of land contained in the previous recitals, for the taxes, interest and costs due severally thereon, concluding with an order, that they be sold to pay the same. The recitals in this order set forth in detail the matters, the substance of which is only required to be recited in the statutory form. After the recitals, follows a judgment against the several owners of the different tracts in favor of the State of Illinois, for the amount of taxes, interest and costs due upon each tract; and it is further considered and adjudged, that each of said lots of land, or so much thereof as will be sufficient to satisfy and pay the judgment, be sold; and this judgment is to be entered as a several judgment against the owners of each lot of land, described in the report and list, and the land itself, for the taxes, interest and costs due upon the same. All of that part of this order, which professes to render a judgment against the owners of the land, is void, for in this proceeding the Court has no authority to render a personal judgment. The whole proceeding is against the land itself. But the order does not stop with the judgment against the owners. A judgment is also rendered against the land itself. The order, in fact, contains two judgments, for the same demand and for the same amount—-the one against the owners, and the other against the lands. The first was without authority; the other was what the Court was authorized and required to do. We do not think that the judgment, which was rendered against the land by authority of law was made void, because in the same order is contained a judgment against the owners, which was rendered in the exercise of an usurped authority. This latter was as void and harmless as if it had never been written. In this collateral proceeding, at least, that part of the order may be treated as surplusage. It being utterly harmless, as against the party, he ought not to claim a benefit from it, by insisting, that it vitiated that which was done by the Court within the pale of its authority, and which was otherwise obligatory. Some question was made upon the argument, whether any judgment was in fact rendered against the land, because the technical words of a judgment are not used in its condemnation, and because the verb is placed in the infinitive instead of the indicative mood. This, however, we think, is but a cavil about terms. After a judgment is rendered against the owners of the land, the order declares that “ this judgment is to be entered against the land itself, for the taxes, interests and costs due upon the same.” The intention and understanding of the Court in using these words—admitting that the form of expression is that of the Court instead of the clerk—cannot be doubted. The idea intended to be expressed, and which is unavoidably understood, is, that by that order of the Court a judgment was rendered against the land. We cannot avoid this understanding, any more than as if the most technical language had been employed in rendering the judgment against the land. Bad grammar does not vitiate. But by supplying a word which may be fairly understood,- even this objection to understanding this order as final, is obviated. Read the expression: “ This judgment is to be considered as entered, as a several judgment against,” &c.; and all idea of a subsequent order, to make-the judgment final and complete, at once disappears. We do not understand, and are not willing to hold, that a judgment is void, because the technical language of approved forms, is not used in expressing it. A judgment, like all other writings, is designed to convey ideas, and consists in the ideas conveyed, and when those ideas are so expressed as to be clearly understood, we are not at liberty to say there is no judgment, because the same ideas were not expressed in more technical or grammatical language. Rejecting, then, as surplusage, that part of this order which pretends to render a personal judgment against the owners of the land, and we have left all of the substance of the judgment, which the statute requires to be entered up in such a case, although the precise form given in the statute is not used. And now we will inquire whether that precise form was indispensable. After giving the form, the statute declares: “ The form, as herein before set forth, shall be pursued as near as the nature of the case will permit.” It is not pretended that the Circuit Court supposed, that this departure from the form given, was rendered necessary, by anything peculiar in the nature of the case. It is a well settled rule of the common law, that neither irregularity nor informality will render a judgment void. Egarton v. Hart, 8 Verm., 208. Our legislature has afforded a most conclusive reason for determining, that want of form shall not vitiate judgments, rendered in favor of the State for taxes due her, any more than in an ordinary case between individuals. The 12th section of the statute of jeofails, which is as follows: “ This chapter shall extend to all suits in any Court of record, for the recovery of any debt due the State, or any duty or revenue thereto belonging, and also to all writs of mandamus and informations of the nature of quo warranto and proceédings thereon.” This judgment was rendered in a suit for the recovery of revenue due .the State, and is necessarily included in the express provisions .of this statute. And there is a fitness and propriety, too, in -providing, that the interests of the State, in suits affecting her pecuniarily, should not suffer, for the want or lack of form, any more than the rights of parties, in suits between individuals. To suppose otherwise, would be opposed to all the well known instincts of legislative bodies. Should we hold that a departure from the prescribed form renders the judgment in this proceeding a nullity, we should have to carry the same principle into other proceedings, the forms of which are prescribed by the legislature. It would be difficult to contemplate the extent of the mischief which would result from such a rule. The statutes abound in forms, which are prescribed as peremptorily as is the form of this judgment, a departure from which, has never been held to vitiate the proceeding. We will only advert to the statute concerning justices of the peace and constables. That statute, creates an inferior jurisdiction, in whose favor no presumptions are indulged, and where a strict conformity to the law conferring the jurisdiction is required. In that statute, the form of the 'summons, and of the warrant to hold to bail, and of the subpoena for witnesses, is given and required to be used in precisely the same language, by which the Court is directed to enter the judgment, in the form given in the statute under consideration. It has never been contended, and probably never will be, that a departure from those forms, if the substance is expressed in those writs, would render the proceeding before the justice utterly void and him a trespasser. In the same statute, and in still more positive language, is the form of the venire for jurors given. The 45th section says: “ The following shall be the form of the writ , for summoning jurors, vizAlthough there is no latitude given for a particle of variation from the form, yet we do not think a juror would be at liberty to disobey the mandates of the writ, substantially the same as that given in the statute, but varient in form. In these laws the legislature never intended to prescribe an iron, unyielding rule, any deviation from which, would break the law. We think it cannot be maintained, that the form of the judgment given here is of the essence of the law. The substance of the statute is, that the order of the Court shall show that certain preliminary steps have been taken, and that a judgment shall be rendered in favor of the State against the land for thé amount of the taxes, interest and costs due the State, and that the land be ordered to be sold to pay the same. When the judgment, as in this case, contains these essential elements, we cannot say that it is a nullity, however improper and unadvised it may be to depart from the prescribed form. But, on this subject, we are not without authority directly in point, in our own Court. In Atkins v. Hinman, 2 Gil., 437, the judgment omitted the following important words, which are contained in the statutory form, to wit: “That the taxes thereon remained due and unpaid on the day of the date of the said collector’s return.” The report of the collector, which showed the non-payment of the taxes, being copied into the judgment, was held sufficient evidence of that fact, without the recital required by the form. Another omission was, that the day on which the collector had made his return was not inserted, and that was held not to be fatal, inasmuch as that fact could be ascertained by reference to the files of the Court. Some matters were also inserted in that 'judgment, not required by the form, but the objection on that account was not sustained. On the subject of the departure from the given form, the Court said: “The omissions and variations in the judgment are merely in matters of form, and evidently clerical mistakes, which ought not to vitiate the judgment, especially when it is apparent from the face of the proceeding, that the Court had jurisdiction of the subject matter, and proceeded to make the proper adjudication.” It is not to be denied, that so far as the essentials of the judgment required by the statute are concerned, there were more omissions in that judgment, thanhn the one before us, and the case establishes beyond controversy, that it is not indispensable to pursue the form given in the statute. The case of Hinman v. Pope, previously decided in 1 Gilman, 131, in nowise conflicts wich the view we have taken. One of the questions decided in that case was, as to the validity of the precept or process issued to the collector, and upon which the sales were made. By the statute, the clerk was required to make out and deliver to the collector a certified copy of the collector’s report, together with the order of the Court thereon, which should constitute the process on which all lands should be sold for taxes. In that case, no such paper, either in form or substance, had been furnished by the clerk.. On the contrary, he issued an order on his own responsibility, commanding the collector to make the sale, without any intimation that it was issued in obedience to an order of the Court, or that the Court had ever entered any judgment against the land, or that even the subject matter had ever been before the Court in any way. Upon its face the paper was void. It was neither a good common law execution, nor such a process as the statute required. The Court said: “ The paper offered in evidence was not such process, either in form or substance, as is required to be issued by the 31st section, and was consequently void. It does not recite that any judgment has ever been rendered by the Court. It is a mere mandate of the clerk, to sell certain lands for taxes, to be found in a collector’s list, appended to the paper. An execution to be valid must show on its face, that such a judgment has been rendered by a competent Court as will justify its emanation.” Here we see the defect was of a substantial and not of a formal character. That case was not put upon the ground, that the process Avas issued in a special proceeding, which required greater strictness than in the exercise of a common law jurisdiction, but the process Avas held to be void, because it would have been void in a common laAV proceeding. As the question is now presented, the validity or effect of this judgment is in nowise impaired, for the reason that it is not clothed Avith the same conclusive attributes, which attach to an ■ordinary judgment. The statute, it is true, allows it to be attacked collaterally, or rather allows the title acquired under the sale to be defeated, by proving any one of four specified things, to wit: “Either that the said land Avas not subject to taxation at the date of the sale; that the taxes had been paid; that the land had never been listed or assessed for taxation ; or, that the same had been redeemed. By proving either of the three first, an attack is made upon the judgment itself, and by the last, the tax title is defeated by something subsequent to the judgment. In this case, no question arises under these provisions of the statute. • Ho attempt has been made to impair the effect of the judgment, in any mode authorized by laAV. Except it be attacked in the mode thus authorized, it is as conclusive as if no provision had been made authorizing it to be questioned collaterally. There is no difference between prima facie and conclusive evidence, where there is nb rebutting or countervailing testimony adduced. There can be no pretence here, that the judgment, as against the lands, does not prove what it purports to establish, but the complaint is that there is no such judgment. Ve, however, think otherwise. We are of opinion, that this order of the Court shows all the facts, which the statute requires should he shown by the judgment, and that it does contain a judgment, in favor of the State, against the lands for the proper -amount, to satisfy which the lands are ordered to be sold. That the order also contains a separate personal judgment against the owners of the lands, may he admitted: but, as the right now claimed does not at all depend upon that part of the order, we entertain no doubt that it may, in this action, be rejected as surplusage, and that it does not render void that part of' the order which is otherwise valid. What effect it would have, were the question raised directly by writ of error or appeal, we express no opinion. Let the judgment be reversed and the cause remanded. Judgment reversed.